245 Park vs. HNA Group Case Number 23-842 Council, is it Oberdier or Oberdier? Oberdier, Your Honor. Third option, Oberdier. Thank you, Mr. Oberdier. You've reserved two minutes for rebuttal. We'll hear from you when you're ready. Thank you, Your Honor. Good morning to the court. My name is Carl Oberdier, as Judge McGinn just said, representing the appellant HNA International. This appeal requires the court to decide a straightforward matter of statutory interpretation regarding the enforcement of judgments under Article 52 of New York CPLR, and specifically when a creditor seeks the turnover of the debtor's membership interest in a limited liability company. And in this case, it's a Delaware limited liability company. And here, the district court ordered a turnover of HNA International's entire membership interest in its Delaware LLC under New York's turnover statute, CPLR 5225A. So we start with CPLR 5201B, which defines property for the purpose of the entire Article 52. And under 5201B, a judgment can be enforced against a debtor's property interest only to the extent that it is assignable. That's expressed in the text of the statute. It has been uniformly interpreted that way by both New York state courts as well as this court. So then we turn to the question of, well, to what extent are membership interests in an LLC, and specifically a Delaware LLC, assignable? Doesn't Hotel 71 tell us the answer? I'm sorry? Doesn't the case of Hotel 71, the intermediate appellate case, give us an answer to that? Well, Your Honor, the Supreme Court of the United States is somewhat fond of the maxim against hiding elephants in mouse holes. And here we have a very carefully constructed statutory scheme, both in Delaware and similarly in New York, and for that matter, the Uniform LLC Act, which 20 other states have adopted. And that statutory scheme carefully delineates in the context of an LLC which interests are freely assignable and which interests are not assignable unless otherwise provided in the LLC agreement. And ownership interests and management interests are expressly non-assignable under all of these statutes unless the LLC agreement provides otherwise. And here it's uncontested that the LLC agreement at issue in this case does not provide for the assignment of ownership and management interests. All that is provided for in the statutes with which the LLC agreement is consistent is what is referred to as economic interest, the right to receive distributions from the company but not participate in its management and not to obtain title to the membership interest, not but to become a member of the LLC itself. Isn't 79 Madison the decision of the New York's highest court on point here? And can you point to any other decision? In response to Judge Miriam's question about 71 Hotel, isn't 79 Madison also consistent? And isn't that an opinion of the highest court of New York? And why does that not apply here? Well, to be clear, 79 Madison is an opinion of the First Department. Hotel 71 is a decision of the highest court, the New York Court of Appeals. It would have been convenient if they didn't use similar numbers to help us. Yes, it would. 79 Madison is frankly a rather odd case on the facts. But it does not consider at all the issue that I'm discussing. It does not consider whether the LLC interests at issue are assignable. One reason it doesn't do that is because the court did not know, because it was not in the record, under which state that LLC was registered. It could have been Wisconsin, could have been Delaware, could have been New York. The record didn't say and the court essentially threw up its hands. So if you're going to do this analysis that the statutory framework clearly requires, you have to figure out, well, which state's LLC law are we going to apply? If it has these anti-assignment provisions, does the LLC agreement override them? And in 79 Madison there was no LLC agreement. Wasn't the choice of law here in New York? In this case? Yes. Judge Kahn. The choice of law for enforcement proceedings was New York. We're not contesting that we start with the CPLR, the enforcement provisions of the CPLR. We think it goes without saying that the fact that a Delaware LLC is subject to enforcement proceedings in New York does not make it a New York LLC. And we think it goes without saying, although there's plenty of cases that we cite in our reply brief, that the question of whether the interests in a Delaware LLC are assignable is determined by the Delaware LLC law, even though New York law otherwise applies. And we cite a whole host of cases on that point on pages 8 and 9 of our reply brief. One of them is the First Department's decision in J.P. Morgan in which the court was dealing with contingent future proceeds from a litigation that was pending in India. And the court said, well, if we're going to determine whether those contingent proceeds are property subject to enforcement by creditors, we have to look to Indian law. Let's step back from all these citations to statutes and deal with the facts here. How was the court wrong in ordering the turnover of the business when it specifically found that your client was trying to dissipate assets and violate a direct court order to notify the other side and the court when it intended to do so? When it's trying to sell pieces of its assets so that it does not have to, the claim being that it does not then satisfy a judgment it owes. How did the court get it wrong when it made these findings that your client was trying to dissipate assets? Well, Judge Kahn, I have to give two parts to that answer. First of all, I'm not aware of any other case in which a district court has found that a debtor was engaging in obstructionist conduct, dissipation of assets, merely because it presented an argument to the court for the court's decision that the court ruled against it. That's not how debtors who are trying to dissipate assets behave. So we think that was a little bit beyond what the line would normally be since we weren't out there trying to engage in deceptive conduct or conduct. So the intended sale of the Palisades Conference Center without proper notice when the opposing side had to seek immediate relief from the court, that wouldn't be sufficient to find intent to dissipate? We did give notice to the court of that, and that sale did not go forward. But let's put that aside because my purpose is not to argue with the facts. How much notice? Well, we gave notice, I believe, the day before the issue was brought to the attention of the court, and we had not signed the purchase agreement in order for that to go forward. But as I say, I'd prefer not to ask this court to overturn a factual determination of Judge Kodal. I think the more salient point is that that finding by Judge Kodal only bore on a completely different issue that I have not raised here. We raised it in our brief. It was also the matter of not notifying them of the filing of bankruptcy as well, correct? That was on notice, Your Honor. Was there a late notice on that? There was no late notice. It also had nothing to do with the appellee in this case. They had no practical interest in that property. Didn't they ultimately purchase the business for $40 million, which is an argument you made that that should be reduced? Yes, they bid on that property in bankruptcy. They bid on that property in bankruptcy and were the successful bidder. That entire thing was above board. We were not trying to, well, I shouldn't say we, you know, the other counsel for the other affiliate, which was not even my client, was not trying to somehow take that asset out of bankruptcy. The direct owner of that asset was the bankrupt debtor, and under no circumstances was that property going to be spirited away to China because it's rather hard to do that to a huge office building in Chicago. But all of that bears on whether a direct turnover to the creditor as opposed to the sheriff under 5225A was appropriate. Judge Kotal did not find that that had anything to do with whether or not the interest in the LLC was property that was available to the creditor. He didn't find that. No other court has found that. That seems to be an entirely separate issue, Your Honor. All right, counsel. I think we'll hear from your adversary now, and then we'll come back to you for rebuttal in a few minutes. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Henry Brownstein on behalf of Appellee 245 Park Member, LLC. And I'd like to start to answer Judge Meehan's direct question, doesn't Hotel 71 answer the question? And the answer clearly is absolutely. H&A's core argument on this appeal is that creditors are limited to the sole remedy of a charging order. And so let's look at what the Court of Appeals did. The Court of Appeals upheld judgment enforcement remedies that were not a charging order. And at issue in that case were membership interests of numerous Delaware LLCs. And it upheld issuance of an attachment, and it upheld orders of a receivership. Not a charging order. And so Hotel 71 speaks directly to the issue. And in so ruling, the Court examined the very words of the very statute that we're talking about here today. The Court of Appeals looked at the words property and transferability. And what the Court held, specifically in the context of Delaware LLCs, is that a membership interest in a Delaware LLC is, quote, clearly property. And while the Court of Appeals didn't have the occasion to address the relief of 5225 turnover, the appellate courts in New York have. And those that have, that address specifically the issue of turnovers of LLC interests, are uniform in finding that it's permissible and indeed have awarded such relief. And 79 Madison, the first department decision we were speaking about briefly earlier, relied upon the Hotel 71 decision and closed the loop and picked up where Hotel 71 left off and found indeed a membership interest in an LLC, Delaware, was indeed property and subject to turnover. The first department, another first department decision that we cite, the Glick Lad case, another first department decision awarded a direct turnover of a Delaware LLC. The second department decision, in Serotkin, a case that H&A cites approvingly, also relied upon Hotel 71, specifically in the 5225 context, and said that the membership interests in Delaware LLCs are indeed property subject to turnover. And yet there's more decisions, there's the Karasan case that H&A cites, a trial court decision awarding a direct turnover of a membership interest. Is your position then, I take it, that in light of Hotel 71 and then the first department cases, including 79 Madison, that there's no need for us to certify any question to the New York courts because they have, in essence, ruled on this issue? Yes, Your Honor. And for certification, there needs to be three elements that H&A needs to satisfy, and they need to satisfy all three. And the first element is, has the Court of Appeals spoken? And if not, is there a split of authority? And we contend that the Court of Appeals has spoken directly to the issue, as I've spoken to about earlier, and that there is no split in authority. H&A cites no appellate decision that breaks the line of authority that helds as a matter of New York law, no case that says as a New York law the only available remedy is a charging order. In fact, even the cases they cite provide for remedies that aren't a charging order. They cite numerous cases in the receivership context. There's attachments, there's turnovers. So their core argument that our client is limited to a charging order is just not borne out by the case law. I also want to take a step back and talk about the context of how we found these parties here. We got involved in a business transaction where our client, which is essentially S.L. Green, New York's largest commercial real estate owner in New York, invested hundreds of millions of dollars with H&A's affiliate. And to get maximum protection for this enormous investment, we negotiated for the guarantee contract at issue here. And a guarantee is, of course, a judgment enforcement device in its core. You want to see collection. And they negotiated for not only the application of New York law, but also specifically for purposes of judgment enforcement, and that New York courts will be deciding those enforcement procedures and applying New York law. And that's not all. The guarantee is irrevocable, unwaivable, and absolute, and it provides for a waiver of all conceivable defenses. And I just want to read one of them here because it's particularly apt. And this is at A130 of the record. Section 1.3, guarantors covenant and agree. I'm going to skip a clause. Two, to fulfill and pay the guaranteed obligations in each case, regardless of any law, statute, rule, regulation, decree or order now or hereafter in effect in any jurisdiction, affecting or purporting to affect in any manner any such terms or rights or remedies of S.L.G. with respect thereto. And what H&A argued below is that Delaware law displaces the CPLR, and the court should have focused solely on the Delaware code for purposes of judgment enforcement. That was the argument they made to Judge Codal and lost. That was the argument they made to Judge Codal again in emergency application to stay enforcement of the proceedings and lost. That was the same argument they made to this court in yet another emergency application to stay enforcement of the judgment and lost. And what's happened since then is that there's been a turnover, free and clear. Our client has owned this asset since the turnover award was, actually for when this court denied a stay. And so where we find ourselves is we have the asset, and what essentially the relief they're seeking is to unwind all of this based upon a new argument. And we've made a judicial stoppable argument in our brief, and I think it applies very well here. They've made numerous arguments below, and now here we are with the asset. And they want to unwind the whole thing based upon a new argument they make, that rather than Delaware displacing entirely the CPLR, you actually had to read into the word property and bring into it the entire Delaware Code. So that would be a manifest injustice to allow unwinding this entire transaction. The horse has left the barn. And in fact, the relief that they're seeking, a turnover back to H&A, is fundamentally inconsistent with the arguments they're making here. Let me ask you, can you address the issue that I, the question I asked your opponent about, isn't part of the reason that the turnover was ordered rather than a charge order, is because of the court's concern about the potential dissipation of assets and lack of notice? Yes, Your Honor. And that's an important aspect of this, because the statute 5225 contemplates that a turnover would go to the sheriff in the first instance. But that's not the end of the analysis. CPLR 5240 grants courts broad discretion to fashion an appropriate relief in the appropriate circumstances. And what the New York cases all say is that such circumstances exist where the asset is difficult to value, or the debtor has engaged in obstruction or frustration efforts so that the creditor can't collect on its judgment. And so this finding was actually important for the judge and the relief that we sought, and that flows directly from 79 Madison. And the discretion, I just want to say, this is not new. There's a Court of Appeals decision, the Guardian Loan case at 47 NY2D 515, discusses the broad discretion courts have, and it was applied specifically in the context of turnovers of Delaware LLC's 79 Madison. There's the Borges case as well. And so, yes, his finding, which the judge was very familiar with the record, the parties to the case, the procedural history, and we think on a clear error standard on this appeal, the court should defer to the judge's familiarity with the record. Just one more point that I think it's worth mentioning. The CPLR just doesn't say what is property subject to enforcement. It also goes on to tell the world what isn't property subject to judgment enforcement, and that's found in CPLR 5205. And that's the provision that has a laundry list of exemptions of kinds of property that are exempt from judgment enforcement, and absent from that list are membership interests of LLC's, Delaware or otherwise. Unless the panel has any further questions, thank you very much. I'll just briefly start with Judge Kahn's question and just note that my friend Mr. Brownstein said really exactly the same thing that I did, which is that Judge Kodal's finding about dissipation of assets related entirely to the separate issue of whether a direct turnover to the creditor was proper as opposed to a turnover to the sheriff as 5225 requires. With respect to the larger issue about Hotel 71, which I never quite got to the first time around, and 79 Madison, I can give you a very categorical statement here, explanation of what's going on. There's a category of cases in which turnovers of the entire interest have been allowed that did not mention or discuss, and apparently it was not brought to the court's attention, this question of, well, are those interests assignable? I can say categorically that no case that 245 part member sites has ever held, yes, we recognize that under Delaware law or even New York law, which is the same, ownership and management interests in an LLC are unassignable. Nevertheless, we're turning those over to the creditor. No case in New York has ever said that. By contrast, no case in New York has ever said we recognize that these interests are unassignable because it's not even disputed that that is what Delaware law says and New York law says. And we're going to, nevertheless, not honor those provisions. Every case that we cite has specifically said, yes, those interests are unassignable. No, they do not go to creditors. And it's a very stark distinction. So 79 Madison does not deal with the assignability question. Hotel 71, as I said, you know, the no elephants and mouse holes case, in a four-word snippet that just says LLC interests are, you know, transferable, certainly didn't deal with that question. It did not deal with the turnover of the LLC interests. And what it did deal with, a prejudgment attachment, was only a status quo order. It was not inconsistent with the notion that you could subject the entire interest in a Delaware LLC to a status quo order because nothing was being turned over to the creditor. And it really is that simple. It's not as though the case law in New York is silent on the question. We cite at pages 14 and 15 of our brief something like 10 cases in which New York courts have said, yes, we recognize that ownership and management decisions in Delaware LLCs, and for that matter New York LLCs, are not assignable. And that matters. We're going to give effect to those decisions. And we just don't think that Hotel 71 in this four-word statement on which 245-part member hangs this out, meant to overturn this clear statutory construct of New York-Delaware Uniform LLC Act, which is something akin to field preemption in the case of LLCs. Thank you, counsel. We have your argument, well argued by you both. Thank you.